Ronald W. **WAGNER**, Claimant–Appellant,

v.

Anthony J. **PRINCIPI**, Secretary of Veterans Affairs, Respondent–Appellee.

No. 02–7347.

United States Court of Appeals, Federal Circuit.

DECIDED: June 1, 2004.

Ronald L. Smith, Disabled American Veterans, of Washington, DC, argued for claimant-appellant.

Ashley N. Bailey, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Deborah A. Bynum, Assistant Director. Of counsel

on the brief was David J. Barrans, Attorney, Department of Veterans Affairs, of Washington, DC. Of counsel were Donald E. Zeglin and Renée L. Szybala, Attorneys, Department of Veterans Affairs, of Washington, DC.

Before NEWMAN, LOURIE and DYK, Circuit Judges.

DYK, Circuit Judge.

Appellant Ronald W. Wagner ("Wagner") appeals from the decision of the Court of Appeals for Veterans Claims affirming the Board of Veterans Appeals' ("BVA") denial of disability benefits based on alleged aggravation of a right knee disorder during service. *Wagner v. West,* No. 99–419, 2000 WL 33155867 (Vet.App. Oct. 19, 2000). Because the incorrect legal standard was applied to rebut the presumption of soundness under 38 U.S.C. § 1111, we vacate and remand for further consideration under the correct standard.

## BACKGROUND

This case involves a claim for disability benefits for the veteran's right knee disorder. Title 38, section 1111 of the United States Code provides that:

[E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or *where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.*

38 U.S.C. § 1111 (2000) (emphasis added). Mr. Wagner served on active duty in the United States Navy from 1964 to 1968. The medical examination report dated February 25, 1964, the day Mr. Wagner enlisted, listed no preexisting defects or diseases. Subsequent in-service medical examinations conducted in 1964, 1965 and 1966 showed that Mr. Wagner complained of pain and a loss of mobility in his right knee. These medical records contained statements from Mr. Wagner indicating that he injured his right knee playing high school football prior to his enlistment. However, there was evidence that this preexisting injury was aggravated during service. For instance, two service medical records from 1965 stated that Mr. Wagner sustained a blow to his right knee in October 1964 and a medical record from 1966 indicated "episodes of 'dislocation'" occurring during service in Vietnam. (J.A. at 60.)

On March 24, 1995, Mr. Wagner filed a claim for disability compensation for service-connected posttraumatic stress disorder to the Veterans Administration ("VA") regional office ("RO"). In a statement in support of this claim filed on April 17, 1995, Mr. Wagner added additional claims for service connection and aggravation for a right knee disorder. In a 1996 rating decision, the RO concluded that the claims for service connection and aggravation for the right knee disorder were not well-grounded.[1] The RO stated that the record showed "some problem in service with a right knee condition with evidence indicating pre service football injury," but that there was "no evidence of any chronic knee condition at separation from service or on the first VA examination, post service." (J.A. at 169.)[2]

1. The enactment of the Veterans Claims Assistance Act, Pub.L. No. 106–475, 114 Stat.2096 (2000), has since removed the well-grounded claim requirement.

2. Mr. Wagner's claim for service connected posttraumatic stress disorder was also denied

On review, the BVA concluded that Mr. Wagner's claim for service connection for his right knee disorder claim was in fact well-grounded, but it ultimately denied service connection and aggravation. *In re Wagner*, No. 96–39 652, slip op. at 14–15 (Bd.Vet.App. Nov. 30, 1998). The BVA stated that Mr. Wagner was entitled to a presumption of soundness under section 1111 because his entrance examination did not report a right knee disorder. *Id.* at 14. However, the BVA found that this presumption had been rebutted because statements in Mr. Wagner's in-service medical records established by clear and unmistakable evidence that he had injured his right knee playing football prior to entering service. *Id.* The BVA thus denied the claim for service connection. The BVA also denied Mr. Wagner's aggravation claim, finding that "the preponderance of the evidence demonstrates that the pre-existing right knee disorder was not aggravated by active duty." *Id.* at 15. Accordingly, the BVA denied service connection and service connected aggravation for the right knee disorder.

Subsequently, the Court of Appeals for Veterans Claims affirmed. *Wagner v. West*, 2000 WL 33155867, slip. op. at 8. That court explained that under 38 C.F.R. § 3.304(b),[3] the implementing regulation for section 1111, the presumption of soundness can be rebutted solely by "clear and unmistakable evidence that an injury or

disease existed prior to service." *Id.* at 5. Applying this standard, the Court of Appeals for Veterans Claims held that "the presumption of soundness was rebutted by clear and unmistakable evidence consisting of Mr. Wagner's own admissions during medical evaluations ... that his knee injury existed prior to his enlistment." *Id.* at 6. The Court of Appeals for Veterans Claims further rejected Mr. Wagner's aggravation claim. It held that Mr. Wagner was not entitled to a presumption of aggravation under 38 U.S.C. § 1153 because there was no evidence that the right knee disorder increased in severity during service.[4] *Id.* at 7. The court found that the BVA's finding—that Mr. Wagner's preexisting condition was not aggravated by service—was not clearly erroneous. *Id.*

Mr. Wagner timely appealed to this court. Following argument, the court ordered supplemental briefing on the issue of statutory construction. *Wagner v. Principi*, No. 02–7347 (Fed.Cir. Mar. 23, 2004).

## DISCUSSION

### I

■ Under 38 U.S.C. § 7292, we have jurisdiction to review decisions of the Court of Appeals for Veterans Claims on issues of law, but not with respect to fact

---

in the 1996 rating decision and is not at issue in this appeal.

3. Section 3.304(b) provides that:

The veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. Only such

conditions as are recorded in examination reports are considered as noted.
38 C.F.R. § 3.304(b) (2003).

4. Section 1153 provides:
A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progression of the disease.
38 U.S.C. § 1153 (2000).

issues or issues of application of law to fact. *See Szemraj v. Principi,* 357 F.3d 1370, 1374–75 (Fed.Cir.2004) (citing *Forshey v. Principi,* 284 F.3d 1335, 1338 (Fed. Cir.2002) (*en banc*)). "We review the appellant's claim of legal error in the decision of the Court of Appeals for Veterans Claims without deference." *Id.* at 1372.

Here the appellant made two claims. The first claim was for a service-connected right knee disorder. This claim was rejected because the BVA and the Court of Appeals for Veterans Claims held that the presumption of soundness under section 1111 had been rebutted by clear and convincing evidence that Mr. Wagner's right knee condition existed prior to his entry into service. The second claim was for aggravation of a preexisting right knee disorder. The BVA and the Court of Appeals for Veterans Claims also rejected this claim, finding that the presumption of aggravation under section 1153 did not apply because there was no evidence of inservice aggravation.

On appeal to this court, Mr. Wagner urges that the Court of Appeals for Veterans claims erred by misconstruing section 1111. That statute permits the government to overcome the presumption of soundness "where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment *and was not aggravated by such service.*" 38 U.S.C. § 1111 (emphasis added). Thus the appellant contends that, in order to rebut the presumption of soundness, the government must show clear and unmistakable evidence of both a preexisting disability *and* a lack of in-service aggravation of that disability.

After Mr. Wagner filed this appeal, the General Counsel for the VA issued an opinion construing section 1111 to require clear and convincing evidence of both preexisting disability and lack of aggrava-

tion during service in order to rebut the presumption of soundness. Vet. Aff. Op. Gen. Couns. Prec. 3–2003 (July 16, 2003), *available at* http://www.va.gov/ogc/docs/PREC3–2003.doc. In light of the General Counsel's opinion, the government now concedes that the Court of Appeals for Veterans Claims applied the wrong standard in determining if the presumption of soundness had been rebutted in this case. Thus, the initial question before us is whether, as the government contends, we should remand the case without addressing the merits of this appeal.

## II

Our decision in *SKF USA Inc. v. United States,* 254 F.3d 1022 (Fed.Cir.2001), provides guidance on this issue. There we held that the question of whether to remand when an agency makes a voluntary remand request associated with a change in agency interpretation hinges upon whether the agency's interpretation is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Id.* at 1029. We explained that:

> If there is a step one *Chevron* issue— that is, an issue as to whether the agency is either compelled or forbidden by the governing statute to reach a different result—a reviewing court ... has considerable discretion. It may decide the statutory issue, or it may order a remand. . . .
>
> Where there is no step one *Chevron* issue, we believe a remand to the agency is required, absent the most unusual circumstances verging on bad faith. Under *Chevron,* agencies are entitled to formulate policy and make rules "to fill any gap left, implicitly or explicitly, by Congress."

*Id.* at 1029–30 (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778). Mr. Wagner contends that this is a step one *Chevron* issue because section 1111 is clear on its face and urges that we should exercise our discretion and construe the statute. We agree that the statute is susceptible of interpretation without resort to *Chevron* deference.

### III

■ Congressional statutes provide for disability "compensation" for "personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. § 1110. The statutes define "compensation" as payment for a "service-connected disability." 38 U.S.C. § 101(13) (2000). "Service-connected" is defined as a "disability [that] was incurred or aggravated ... in line of duty." 38 U.S.C. § 101(16). In other words, a claim may either be for a service-connected disease or for aggravation of a preexisting disease or injury.[5] The statute involved here (section 1110) provides compensation for wartime service. A different statute, 38 U.S.C. § 1131, provides similar compensation for peacetime service. In each case, there is a presumption of soundness, that is, a presumption that the veteran was in sound condition upon entrance into service, except as to disorders noted at that time. *See* 38 U.S.C. § 1111 (wartime service); 38 U.S.C. § 1132 (peacetime service). The government may overcome the presumption in both cases. For peacetime service, the presumption is overcome "where evidence or medical judgment is such as to warrant a finding that the disease or injury existed before acceptance and enrollment." 38 U.S.C. § 1132. In

the case of wartime service, as here, it may be overcome only "where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment *and was not aggravated by such service.*" 38 U.S.C. § 1111 (emphasis added). The question is what this language means.

At the outset we note that the language of section 1111's rebuttal standard is somewhat difficult to parse. As the government recognizes, in connection with aggravation claims "it may seem illogical to require proof of lack of aggravation—a requirement that assumes the veteran was *not* in sound condition at entry into service—to rebut a presumption that the veteran *was* in sound condition at entry into service." (Supp. Br. for Resp't–Appellee at 4.) Indeed, on its face section 1111 appears to be somewhat self-contradictory. It would seem that rigidly adhering to the presumption of soundness would in fact defeat an aggravation claim since such claims are premised on the existence of a preexisting injury.

Not surprisingly, the parties offer differing interpretations of the statute's effect. The appellant asserts that, by requiring clear and unmistakable evidence of both a preexisting condition and a lack of in-service aggravation to overcome the presumption of soundness, section 1111 in effect creates a presumption of aggravation. We do not agree. The language of section 1111 does not support the appellant's interpretation, and any such interpretation would be inconsistent with the presumption of aggravation under section 1153, which governs the burden of proof for

---

**5.** Of course, a claim for aggravation also requires a showing that the aggravation is service-connected. For sake of convenience, we use the term "service-connected" herein to refer to a disability that is wholly service-connected, as opposed to an aggravation claim.

aggravation claims. The government, on the other hand, contends that:

> [i]f VA could not prove either the preexistence of the injury or lack of aggravation, it would have failed to rebut the presumption of soundness. In such cases, whether and to what extent the veteran was entitled to compensation for the injury would be determined upon the assumption that the injury was incurred during service.

(Supp. Br. for Resp't–Appellee at 3.) The assumption that the government's failure to show lack of aggravation results in a failure to overcome the presumption of soundness may seem odd in cases like the present one, where the veteran concedes that his condition preexisted entrance into service. However, in light of the statutory language and legislative history, it is clear that Congress intended exactly this result—to effectively convert aggravation claims into ones for service connection when the government fails to overcome the presumption of soundness under section 1111.

## IV

The language of section 1111's rebuttal standard has its origins in a 1934 statute, Independent Offices Appropriation Act, 1935, ch. 102, § 27, 48 Stat. 509, 524 (1934) (the "1934 statute"). The background of that statute is as follows. The World War Veterans' Act, 1924, ch. 320, § 200, 43 Stat. 607, 615 (the "1924 statute"), provided a presumption of soundness in claims for service-connected disability for World War I veterans. "[E]xcept as to defects, disorders, or infirmities made of record ... at the time of, or prior to, inception of active service," this presumption was "con-

clusive[ ]." *Id.* at 616. Following the start of the Depression, legislation aimed at "maintain[ing] the credit of the United States Government" gave the President authority to issue regulations prescribing, amongst other things, "the nature and extent of proofs and presumptions" applicable to veterans seeking service-connected benefits. *See* Act of Mar. 20, 1933, ch. 3, § 4, 48 Stat. 8, 9.[6] Pursuant to the authority delegated him, the President issued regulations allowing the presumption of soundness to be overcome "where evidence or medical judgment is such as to warrant a finding that the injury or disease existed prior to acceptance and enrollment." Veterans' Regulation No. 1(a), pt. I, ¶ I(b) (Exec. Order No. 6,156), *reprinted in* 38 U.S.C. § 723 (1934) ("Regulation 1(a)"). The 1934 statute was enacted for the purpose of reestablishing service-connection for World War I veterans where it had been severed by application of the President's new regulations. The 1934 statute applied only to World War I veterans and provided that:

> service connection is hereby reestablished ... *Provided,* That the provisions of this section shall not apply ... to persons as to whom *clear and unmistakable evidence discloses that the disease, injury, or disability had inception before or after the period of active military or naval service, unless such disease, injury, or disability is shown to have been aggravated during service* ... the burden of proof being on the Government.

1934 statute, 48 Stat. at 524 (second emphasis added). In other words, the 1924 statute's conclusive presumption of soundness for World War I veterans was made

6. *See also* Independent Offices Appropriation Act, 1934, ch. 101, § 20, 48 Stat. 283, 309 (1933) (granting the President power to create "special boards" to apply the new regulations to cases where "presumptive service connection" was previously established under the 1924 statute).

rebuttable, but only if the government could show by clear and unmistakable evidence that (1) the veteran's condition preexisted service and (2) that condition was not aggravated by service.

During World War II, the standard under Regulation 1(a), rather than the 1934 statute, continued to govern the presumption of soundness for non-World War I veterans. Members of the House became concerned that World War II veterans, after having served for significant periods of time, were being "turned out of the service" and denied pensions "on the theory that they were disabled before they were ever taken into the service." 89 Cong. Rec. 7,386 (1943) (statement of Rep. Rankin). The House sought to remedy this problem by passing H.R. 2703, which amended Regulation 1(a) to make the presumption of soundness conclusive for conditions not noted upon entry into service.[7]

The Administrator of Veterans' Affairs opposed this change. The Administrator urged that "[e]ven with the greatest of care, medical officers in the armed forces cannot possibly discover all existing disease or disabilities." S.Rep. No. 78–403, at 6 (1943). Drawing upon the language of the 1934 statute, the Administrator recommended that the bill be revised to permit rebuttal "where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment." *Id.* The Senate adopted this

suggestion in an amendment to H.R. 2703, further adding the phrase "and was not aggravated by such active military or naval service." *Id.* at 2. The Senate explained that:

> the amendment . . . is for the purpose of applying a rebuttable presumption . . . for war service connection of disability or death . . . similar to that applied for World War I service connection of disability or death under [the 1934 statute].
>
> *The language added by the committee, "and was not aggravated by such active military or naval service" is to make clear the intention to preserve the right in aggravation cases as was done in [the 1934 statute].*

*Id.* (emphasis added). The House later adopted the Senate amendment without additional change.[8] *See* 89 Cong. Rec. 7,387 (statement of Rep. Rankin) ("It places the burden of proof on the Veterans' Administration to show by unmistakable evidence that the injury or disease existed prior to acceptance and enrollment and was not aggravated by such active military or naval service.")

The Senate amendment to H.R. 2703 accomplished three things. First, it made clear Congress's intent that the government bore the burden of rebutting the presumption of soundness by clear and unmistakable evidence.[9] Second, the amendment provided that the presumption could not be rebutted absent a showing by

---

7. That bill provided that:
   every person employed in the active military or naval service for 90 days or more shall be taken to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment. 89 Cong. Rec. 6,208 (1943).

8. This portion of the 1943 act was later codified without material change to the rebuttal standard at 38 U.S.C. § 311, Act of Sept. 2,

1958, Pub. L. No. 85–857, § 311, 72 Stat. 1105, 1119, which was later renumbered as section 1111, Department of Veterans Affairs Codification Act, Pub. L. No. 102–83, § 5(a), 105 Stat. 378, 406 (1991).

9. *See* 89 Cong. Rec. 7,388 (1943) (statement of Rep. McGregor) ("I am therefore very grateful to the chairman of the committee for making provision that the burden of proof is shifted to the administration); *see also id.* at 7,387 (statement of Rep. Rankin).

clear and unmistakable evidence that the veteran's condition preexisted service. Third, the amendment established that a presumption of soundness would apply, even when there was evidence of a preexisting condition, if the government failed to show by clear and unmistakable evidence that a veteran's preexisting condition was not aggravated. This essentially had the effect of converting an aggravation claim into one for service-connected disability where the government could not show a lack of aggravation of a preexisting condition by clear and unmistakable evidence.[10]

## V

■ In view of the legislative history and the language of section 1111, we hold that the government must show clear and unmistakable evidence of both a preexisting condition and a lack of in-service aggravation to overcome the presumption of soundness for wartime service under section 1111.

The effect of section 1111 on claims for service-connected disability thus may be summarized as follows. When no preexisting condition is noted upon entry into service, the veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the veteran's disability was both preexisting and not aggravated by service. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress of the" preexisting condition. 38 U.S.C. § 1153. If this burden is met, then the veteran is not entitled to service-connected benefits. However, if the government fails to rebut the presumption of soundness under section 1111, the veteran's claim is one for service connection. This means that no deduction for the degree of disability existing at the time of entrance will be made if a rating is awarded. *See* 38 C.F.R. § 3.322.[11]

On the other hand, if a preexisting disorder is noted upon entry into service, the veteran cannot bring a claim for service connection for that disorder, but the veteran may bring a claim for service-connected aggravation of that disorder. In that case section 1153 applies and the burden falls on the veteran to establish aggravation. *See Jensen v. Brown,* 19 F.3d 1413, 1417 (Fed.Cir.1994). If the presumption of aggravation under section 1153 arises, the burden shifts to the government to show a lack of aggravation by establishing "that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153; *see also* 38 C.F.R. § 3.306; *Jensen,* 19 F.3d at 1417.

10. While the 1943 statute changed the wartime rebuttal standard to that appearing in section 1111, the rebuttal standard for veterans serving during peacetime was not changed and has since been codified at 38 U.S.C. § 1132. *Cf.* Regulation 1(a), pt. II, ¶ I(b).

11. Section 3.322 provides that:
[i]n cases involving aggravation by active service, the rating will reflect only the degree of disability over and above the degree of disability existing at the time of entrance into active service, whether the particular condition was noted at the time of entrance into active service, or whether it is determined upon the evidence of record to have existed at that time. It is necessary to deduct from the present evaluation the degree, if ascertainable, of the disability existing at the time of entrance into active service....
38 C.F.R. § 3.322. Of course, section 1110 also provides that "no compensation shall be paid if the disability is a result of the veterans own willful misconduct or abuse of alcohol or drugs." 38 U.S.C. § 1110.

## CONCLUSION

We hold that the correct standard for rebutting the presumption of soundness under section 1111 requires the government to show by clear and unmistakable evidence that (1) the veteran's disability existed prior to service and (2) that the pre-existing disability was not aggravated during service. Here, both the BVA and the Court of Appeals for Veterans Claims applied the incorrect legal standard for rebutting the presumption of soundness. Because the correct legal standard was not applied, we remand for further consideration of Mr. Wagner's claim for service connection for a right knee injury.

*VACATED AND REMANDED.*

## COSTS

No costs.